1

2

3            UNITED STATES DISTRICT COURT
4          WESTERN DISTRICT OF WASHINGTON
                      AT TACOMA
5

6   GAIL ANDERSON,
                                          Case No. 3:11-cv-05644-KLS
7                      Plaintiff,
                                          ORDER REVERSING AND
8        v.                               REMANDING DEFENDANT'S
                                          DECISION TO DENY BENEFITS
9   MICHAEL J. ASTRUE. Commissioner of
    Social Security,
10
                       Defendant.
11

12

13

14

15       Plaintiff has brought this matter for judicial review of defendant's denial of her

16  application for supplemental security income ("SSI") benefits.  Pursuant to 28 U.S.C. § 636(c),

17  Federal Rule of Civil Procedure 73 and Local Rule MJR 13, the parties have consented to have

18  this matter heard by the undersigned Magistrate Judge.  After reviewing the parties' briefs and

19  the remaining record, the Court hereby finds that for the reasons set forth below, defendant's

20  decision to deny benefits should be reversed and that this matter should be remanded for further

21  administrative proceedings.

22

23                      FACTUAL AND PROCEDURAL HISTORY

24       On November 15, 2006, plaintiff filed an application for SSI benefits, alleging disability

25  as of January 1, 2005, due to fibromyalgia. See Administrative Record ("AR") 9, 63.  On March

26  2, 2007, her application was denied upon initial administrative review thereof and on March 25,

ORDER - 1

2007, it again was denied on reconsideration. See AR 9, 32, 38. A hearing was held before an administrative law judge ("ALJ") on May 19, 2009, at which plaintiff, represented by counsel, appeared and testified, as did a vocational expert. See AR 18-29.

On September 1, 2009, the ALJ issued a decision in which plaintiff was determined to be not disabled. See AR 9-17. Plaintiff's request for review of the ALJ's decision was denied by the Appeals Council on June 24, 2011, making the ALJ's decision defendant's final decision. See AR 1; see also 20 C.F.R. § 416.1481. On August 22, 2011, plaintiff filed a complaint in this Court seeking judicial review of the ALJ's decision. See ECF #1. The administrative record was filed with the Court on October 25, 2011. See ECF #7. The parties have completed their briefing, and thus this matter is now ripe for review by the Court.

Plaintiff argues the ALJ's decision should be reversed and remanded to defendant for an award of benefits, because the ALJ erred: (1) in evaluating the medical evidence in the record; (2) in discounting plaintiff's credibility; (3) in evaluating the lay witness evidence in the record; (4) in assessing plaintiff's residual functional capacity; and (5) in finding her to be capable of performing other jobs existing in significant numbers in the national economy. The Court agrees the ALJ erred in determining plaintiff to be not disabled, but for the reasons set forth below finds that while defendant's decision should be reversed, this matter should be remanded for further administrative proceedings.

DISCUSSION

This Court must uphold defendant's determination that plaintiff is not disabled if the proper legal standards were applied and there is substantial evidence in the record as a whole to support the determination. See Hoffman v. Heckler, 785 F.2d 1423, 1425 (9th Cir. 1986). Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to

support a conclusion. <u>See</u> <u>Richardson v. Perales</u>, 402 U.S. 389, 401 (1971); <u>Fife v. Heckler</u>, 767 F.2d 1427, 1429 (9th Cir. 1985). It is more than a scintilla but less than a preponderance. <u>See</u> <u>Sorenson v. Weinberger</u>, 514 F.2d 1112, 1119 n.10 (9th Cir. 1975); <u>Carr v. Sullivan</u>, 772 F. Supp. 522, 524-25 (E.D. Wash. 1991). If the evidence admits of more than one rational interpretation, the Court must uphold defendant's decision. <u>See</u> <u>Allen v. Heckler</u>, 749 F.2d 577, 579 (9th Cir. 1984).

I.     The ALJ's Evaluation of the Medical Evidence in the Record

The ALJ is responsible for determining credibility and resolving ambiguities and conflicts in the medical evidence. <u>See</u> <u>Reddick v. Chater</u>, 157 F.3d 715, 722 (9th Cir. 1998). Where the medical evidence in the record is not conclusive, "questions of credibility and resolution of conflicts" are solely the functions of the ALJ. <u>Sample v. Schweiker</u>, 694 F.2d 639, 642 (9th Cir. 1982). In such cases, "the ALJ's conclusion must be upheld." <u>Morgan v. Commissioner of the Social Sec. Admin.</u>, 169 F.3d 595, 601 (9th Cir. 1999). Determining whether inconsistencies in the medical evidence "are material (or are in fact inconsistencies at all) and whether certain factors are relevant to discount" the opinions of medical experts "falls within this responsibility." <u>Id.</u> at 603.

In resolving questions of credibility and conflicts in the evidence, an ALJ's findings "must be supported by specific, cogent reasons." <u>Reddick</u>, 157 F.3d at 725. The ALJ can do this "by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." <u>Id.</u> The ALJ also may draw inferences "logically flowing from the evidence." <u>Sample</u>, 694 F.2d at 642. Further, the Court itself may draw "specific and legitimate inferences from the ALJ's opinion." <u>Magallanes v. Bowen</u>, 881 F.2d 747, 755, (9th Cir. 1989).

ORDER - 3

The ALJ must provide "clear and convincing" reasons for rejecting the uncontradicted opinion of either a treating or examining physician. Lester v. Chater, 81 F.3d 821, 830 (9th Cir. 1996). Even when a treating or examining physician's opinion is contradicted, that opinion "can only be rejected for specific and legitimate reasons that are supported by substantial evidence in the record." Id. at 830-31. However, the ALJ "need not discuss *all* evidence presented" to him or her. Vincent on Behalf of Vincent v. Heckler, 739 F.3d 1393, 1394-95 (9th Cir. 1984) (citation omitted) (emphasis in original). The ALJ must only explain why "significant probative evidence has been rejected." Id.; see also Cotter v. Harris, 642 F.2d 700, 706-07 (3rd Cir. 1981); Garfield v. Schweiker, 732 F.2d 605, 610 (7th Cir. 1984).

In general, more weight is given to a treating physician's opinion than to the opinions of those who do not treat the claimant. See Lester, 81 F.3d at 830. On the other hand, an ALJ need not accept the opinion of a treating physician, "if that opinion is brief, conclusory, and inadequately supported by clinical findings" or "by the record as a whole." Batson v. Commissioner of Social Sec. Admin., 359 F.3d 1190, 1195 (9th Cir. 2004); see also Thomas v. Barnhart, 278 F.3d 947, 957 (9th Cir. 2002); Tonapetyan v. Halter, 242 F.3d 1144, 1149 (9th Cir. 2001). An examining physician's opinion is "entitled to greater weight than the opinion of a nonexamining physician." Lester, 81 F.3d at 830-31. A non-examining physician's opinion may constitute substantial evidence if "it is consistent with other independent evidence in the record." Id. at 830-31; Tonapetyan, 242 F.3d at 1149.

    A.    Drs. Hamill, Dr. Nakashima and Plaintiff's Weight Loss

Plaintiff challenges the following findings made by the ALJ in regard to the objective medical evidence in the record:

> On December 27, 2007, [James J.] Nakashima[, M.D.,] performed a physical evaluation of the claimant's exertional capabilities. Based on this evaluation,

ORDER - 4

Dr. Nakashima opined that the severity of the claimant's fibromyalgia and osteoarthritis was moderate, potentially causing significant interference with the claimant's ability to perform one or more basic work-related activities, and that the severity of her inflammatory arthritis was marked, potentially causing a very significant interference with the claimant's ability to perform one or more basic work-related activities. Dr. Nakashima surmised that as a result of the claimant's impairments, her overall work level was severely limited, opining that she was unable to lift at least two pounds, or unable to stand and/or walk (Ex. 11F). However, in a subsequent physical examination performed on October 29, 2008, Dr. Nakashima noted improvement in the claimant's exertional capabilities. Although the severity of the claimant's fibromyalgia and osteoarthritis had stayed the same, her inflammatory arthritis was now mild, no longer interfering with her ability to perform basic work-related activities. As a result of this improvement, Dr. Nakashima increased the claimant's overall work level to sedentary, opining that she was able to lift a maximum of ten pounds, and frequently lift and/or carry such articles as files and small tools (Ex. 11F). On May 7, 2009, [John] Hamill[, M.D.,] similarly opined that the claimant was capable of occasionally lifting ten pounds, and further adding that over the course of an eight hour work day the claimant was capable of sitting for about four hours and standing/walking for less than two hours with normal breaks (Ex. 12F). The undersigned notes further improvement in the claimant's condition as the record reflects weight loss of thirty-seven pounds between [Neal R.] Kirkpatrick[, M.D.,]'s February 9, 2007 examination and the May 19, 2009 hearing. This weight loss can be attributed to many reasons, one of which may be the YMCA swimming routine adopted by the claimant (13F).

The opinions of Dr. Hamill, Dr. Nakashima, and Dr. Kirkpatrick are all generally consistent with one another, and as a result are given great weight as the record contains no conflicting opinion from any other medical source.

AR 14. The Court agrees the ALJ erred in finding as he did here.

The ALJ assessed plaintiff with the residual functional capacity:

**. . . to perform sedentary work . . . with the following special limitations to accommodate the claimant's severe impairments; standing/walking limited to two of eight workday hours, able to be seated for eight of eight workday hours, occasional extension and overhead reach with right arm, and lifting limited to ten pounds both occasionally and frequently.**

AR 11-12 (emphasis in original).[1] As noted by plaintiff, however, Dr. Hamill restricted her to

---

[1] Defendant employs a five-step "sequential evaluation process" to determine whether a claimant is disabled. <u>See</u> 20 C.F.R. § 416.920. If the claimant is found disabled or not disabled at any particular step thereof, the disability

ORDER - 5

lifting ten pounds only occasionally (see AR 279), which clearly is at odds with the ability to lift assessed by the ALJ above. Dr. Hamill, furthermore, opined that plaintiff could sit for a total of only four hours in an eight-hour workday, which appears to be inconsistent with a limitation to performing sedentary work. See id.; see also Social Security Ruling ("SSR") 96-9p, 1996 WL 374185 *3 (defining sedentary work to include the ability to sit for "generally [a] total about 6 hours of an 8-hour workday"). Lastly, although as set forth above the ALJ found plaintiff could reach overhead occasionally with her right arm, Dr. Hamill indicated she had an inability to do so. See AR 280. Because the ALJ failed to provide any reason for not adopting these additional limitations found by Dr. Hamill, he erred.

The ALJ also erred in failing to explain why he did not adopt the moderate limitation in handling found by Dr. Nakashima in late October 2008. See AR 265 (defining "moderate" to mean "[s]ignificant interference with the ability to perform one or more basic work-related activities"). This error is not harmless, as plaintiff notes, since the ALJ went on to find she was able to perform the jobs of small products assembler and paper sorter/recycler (see AR 16, 27-28), both of which at least according to the Dictionary of Occupational Titles ("DOT"), appear to require frequent handling, which is defined as "[e]xist[ing] from 1/3 to 2/3 of the time." (DOT 649.687-010, 1991 WL 685669; DOT 706.684-022, 1991 WL 679050). As it seems rather clear that an individual with a moderate limitation in the ability to handle cannot do so frequently, the ALJ's failure to properly address this issue is harmful error. See Stout v. Commissioner, Social Security Admin., 454 F.3d 1050, 1055 (9th Cir. 2006) (error harmless where non-prejudicial to

---

determination is made at that step, and the sequential evaluation process ends. See id. If a disability determination "cannot be made on the basis of medical factors alone at step three of that process," the ALJ must identify the claimant's "functional limitations and restrictions" and assess his or her "remaining capacities for work-related activities." Social Security Ruling ("SSR") 96-8p, 1996 WL 374184 *2. A claimant's residual functional capacity ("RFC") assessment is used at step four to determine whether he or she can do his or her past relevant work, and at step five to determine whether he or she can do other work. See id.

claimant or irrelevant to ALJ's ultimate disability conclusion); <u>Parra v. Astrue</u>, 481 F.3d 742, 747 (9th Cir. 2007) (finding any error on part of ALJ would not have affected "ALJ's ultimate decision").

On the other hand, the Court finds no error on the ALJ's part in evaluating the findings of Dr. Nakashima regarding his opinion that plaintiff had "restricted mobility, agility or flexibility" in the following areas: lifting, carrying, pushing, pulling, and reaching. AR 265. This is because there is no indication in the record that a moderate limitation the ability to lift and carry assessed by Dr. Nakashima (<u>see</u> <u>id.</u>) is more restrictive than the lifting and carrying limitations assessed by the ALJ, nor did Dr. Nakashima give any indication as to the actual level of restriction he found plaintiff had in her ability to push, pull and reach. <u>See</u> <u>id.</u> As for evidence in the record concerning plaintiff's weight, the Court agrees it fails to show that whatever weight loss she may experienced between the time Dr. Kirkpatrick examined her and the administrative hearing, it resulted in "further improvement in [her] condition" as found by the ALJ (AR 14), nor does the ALJ explain how she specifically improved or how that evidence otherwise supports the ALJ's residual functional capacity assessment.

B.    <u>Dr. Hoskins and Mr. Brown</u>

Robert Hoskins, M.D., completed a physical residual functional capacity assessment form in late May 2007, in which he found that plaintiff could occasionally lift and/or carry ten pounds and frequently lift and/or carry less than ten pounds, that she was limited in her ability to reach in "all directions (including overhead)" and that she "should avoid constant [overhead] work [with her right upper extremity]." AR 194, 198. Because, as noted above, the ALJ limited plaintiff to only occasional overhead reaching with her right arm, his assessment is not inconsistent with that of Dr. Hoskins in this regard. On the other hand, also as noted above, because the ALJ found

plaintiff to be capable of lifting ten pounds both occasionally and frequently, Dr. Hoskins assessed a more significant limitation here than did the ALJ. Since the ALJ did not give any explanation for this inconsistency, he erred.

The record also contains a physical residual functional capacity assessment form that was completed by Gary S. Brown, a non-physician, in early March 2007, in which plaintiff again was found to be able to occasionally lift and/or carry ten pounds and frequently lift and/or carry less than ten pounds. See AR 160. Mr. Brown also found, however, that plaintiff "SHOULD AVOID OVERHEAD REACHING." AR 162 (emphasis in original). The ALJ noted the findings of Mr. Brown, stating they were "generally consistent with the evidentiary record," and therefore giving them "significant weight." AR 14-15. However, once more the ALJ failed to explain why he did not adopt these additional limitations. Thus, to that extent he erred here as well.[2]

II.  The ALJ's Assessment of Plaintiff's Credibility

Questions of credibility are solely within the control of the ALJ. See Sample, 694 F.2d at 642. The Court should not "second-guess" this credibility determination. Allen, 749 F.2d at 580. In addition, the Court may not reverse a credibility determination where that determination is based on contradictory or ambiguous evidence. See id. at 579. That some of the reasons for discrediting a claimant's testimony should properly be discounted does not render the ALJ's determination invalid, as long as that determination is supported by substantial evidence. Tonapetyan , 242 F.3d at 1148.

---

[2] See 20 C.F.R. § 416.913(d) (evidence from "other sources'" may be used to "show the severity" of impairments and their effect on ability to work). While the opinions of non-medical sources such as Mr. Brown generally are treated in the same manner as testimony of lay witnesses – and thus the ALJ need only provide "germane" reasons for rejecting them – as discussed above the ALJ did not do so here, but instead gave that of Mr. Brown significant weight. See 20 C.F.R. § 416.913(d) (Commissioner may also use evidence from other sources to show the severity of claimant's impairment(s) and how those impairments affects his or her ability to work); see also Lewis v. Apfel, 236 F.3d 503, 511-12 (9th Cir. 2001).

To reject a claimant's subjective complaints, the ALJ must provide "specific, cogent reasons for the disbelief." Lester, 81 F.3d at 834 (citation omitted). The ALJ "must identify what testimony is not credible and what evidence undermines the claimant's complaints." Id.; see also Dodrill v. Shalala, 12 F.3d 915, 918 (9th Cir. 1993). Unless affirmative evidence shows the claimant is malingering, the ALJ's reasons for rejecting the claimant's testimony must be "clear and convincing." Lester, 81 F.2d at 834. The evidence as a whole must support a finding of malingering. See O'Donnell v. Barnhart, 318 F.3d 811, 818 (8th Cir. 2003).

In determining a claimant's credibility, the ALJ may consider "ordinary techniques of credibility evaluation," such as reputation for lying, prior inconsistent statements concerning symptoms, and other testimony that "appears less than candid." Smolen v. Chater, 80 F.3d 1273, 1284 (9th Cir. 1996). The ALJ also may consider a claimant's work record and observations of physicians and other third parties regarding the nature, onset, duration, and frequency of symptoms. See id.

In this case, the ALJ discounted plaintiff's credibility in part for the following reason:

> . . . the claimant has described daily activities which are not limited to the extent one would expect, given the complaints of disability symptoms and limitations. The claimant lives alone and has not reported any particular help in maintaining the residence, caring for her personal needs, preparing daily meals, shopping for food and household items, and going out for a daily walk with her adult daughter (Ex. 6E). Therefore, the claimant is found to be only generally credible.

AR 12-13. The Ninth Circuit has recognized "two grounds for using daily activities to form the basis of an adverse credibility determination." Orn v. Astrue, 495 F.3d 625, 639 (9th Cir. 2007). First, such activities can "meet the threshold for transferable work skills." Id. Thus, a claimant's credibility may be discounted if he or she "is able to spend a substantial part of his or her day performing household chores or other activities that are transferable to a work setting." Smolen,

ORDER - 9

80 F.3d at 1284 n.7.

The claimant, however, need not be "utterly incapacitated" to be eligible for disability benefits, and "many home activities may not be easily transferable to a work environment." Id. In addition, the Ninth Circuit has "recognized that disability claimants should not be penalized for attempting to lead normal lives in the face of their limitations." Reddick, 157 F.3d at 722. Under the second ground in Orn, a claimant's activities of daily living can "contradict his [or her] other testimony." Id.

The Court agrees with plaintiff that the ALJ erred in discounting her credibility based on her activities of daily living, as the record fails to show she is able to spend a substantial part of her day performing them or that those activities necessarily contradict her "other testimony." See AR 76-81, 85-90, 103, 291. The Court also agrees the ALJ erred in finding plaintiff to be not fully credible because "the preponderance of the medical evidence fails to support the contention that [she] can do no work at all." AR 13. While a finding that a claimant's subjective complaints are "inconsistent with clinical observations" can satisfy the clear and convincing requirement, here, as discussed above, the ALJ failed to properly evaluate the medical evidence in the record. Regennitter v. Commissioner of SSA, 166 F.3d 1294, 1297 (9th Cir. 1998).

As such, the ALJ's reliance on this basis for finding a lack of credibility was improper as well. So too was the ALJ's reliance on "the fact that [plaintiff's] diabetes is well controlled . . . despite her testimony otherwise" and that "she rarely checks her blood sugars," as she has not alleged she became disabled due to that condition. See AR 15, 63. Nevertheless, the ALJ did provide other, valid reasons for discounting plaintiff's credibility.[3] For example, he discounted

---

[3] The fact that some of the reasons for discounting a claimant's credibility are improper, does not render the ALJ's credibility determination invalid, as long as that determination is supported by substantial evidence in the record, as it is in this case. Tonapetyan, 242 F.3d at 1148; see also Bray v. Commissioner of Social Sec. Admin., 554 F.3d

ORDER - 10

her credibility based on a "very poor earnings history." AR 15; see also Thomas v. Barnhart, 278 F.3d 947, 959 (9th Cir. 2002) (ALJ properly found extremely poor work history and lack of propensity to work in lifetime negatively affected claimant's credibility regarding her inability to work). Plaintiff argues this should not be used against her, as "this is an SSI-only application" case, "which, by definition, exists to assist individuals who have *not* had an extensive work history." ECF #15, p. 15 (emphasis in original). But this fails to explain *why* plaintiff does not have an extensive work history. Absent such an explanation, it was not unreasonable for the ALJ find plaintiff's poor work history adversely impacted her credibility.

Lastly, the ALJ discounted plaintiff's credibility in part because she was noted to have been "positive on testing for both marijuana and methamphetamine use, which she has denied." AR 15. Plaintiff points to her testimony at the hearing in arguing she has not denied past use of these substances. See AR 25. But all plaintiff testified to at the hearing was that her physician had refused to prescribe her narcotic medications after she tested positive for "street drugs" and that was all straightened out now. Id. However, plaintiff never actually admitted that she had engaged in past use of methamphetamines, although she did admit to use of marijuana. See AR 123, 219. In addition, the record clearly shows she denied such use even while being confronted by her medical providers with a positive drug screen. See AR 120, 123, 216-17, 219, 221, 225-26. As such, the ALJ was not remiss in discounting plaintiff's credibility in part for this reason as well.

III.    The ALJ's Evaluation of the Lay Witness Evidence in the Record

Lay testimony regarding a claimant's symptoms "is competent evidence that an ALJ must take into account," unless the ALJ "expressly determines to disregard such testimony and gives

1219, 1227 (9th Cir. 2009) (while ALJ relied on improper reason for discounting claimant's credibility, he presented other valid, independent bases for doing so, each with "ample support in the record").

reasons germane to each witness for doing so." Lewis v. Apfel, 236 F.3d 503, 511 (9th Cir. 2001). In rejecting lay testimony, the ALJ need not cite the specific record as long as "arguably germane reasons" for dismissing the testimony are noted, even though the ALJ does "not clearly link his determination to those reasons," and substantial evidence supports the ALJ's decision. Id. at 512. The ALJ also may "draw inferences logically flowing from the evidence." Sample, 694 F.2d at 642.

Plaintiff also challenges the ALJ's evaluation of the lay witness evidence in the record:

> The evidentiary record also contains the opinion of third party witness, Wilma J. Anderson, the claimant's mother. Mrs. Anderson stated that the claimant lives alone, does household chores such as cleaning and laundry, has no problems with her personal care (hygiene, grooming, etc.), makes her own meals, takes care of her dog (feeding, bathing, etc.), gets around by driving on her own, does her own shopping, enjoys playing with her grandchildren, and visits and talks on the phone in her home almost daily. Further, Mrs. Anderson asserted that the claimant can lift a maximum of twenty-five pounds, and follow written and spoken instructions well (Ex. 5E). Mrs. Anderson's remarks are generally consistent with the claimant's own function report. Although Mrs. Anderson's opinion is not entitled to substantial weight, the undersigned nevertheless finds it persuasive in reaching the above residual functional capacity ruling as it demonstrates that irrespective of the claimant's impairments, she still leads an active and social life.

AR 14. The Court agrees with plaintiff that the ALJ erred in failing to explain why he declined to adopt all of Ms. Anderson's stated observations. The activities Ms. Anderson described do not clearly demonstrate plaintiff leads an active and social life as found by the ALJ. See AR 76-82. In addition, Ms. Anderson stated that plaintiff had "a hard time" walking and taking a bath or shower, and that it might take her "all day" to clean and do the laundry. AR 77-78, 81. Ms. Anderson also stated that plaintiff could not "do house or yard work" or lift or rough house with her grandchildren because it hurt her. AR 79-80. It is not at all clear why the ALJ did not adopt these limitations, despite finding Ms. Anderson's statement persuasive.

ORDER - 12

IV.    The ALJ's Findings at Step Five

As noted above, the ALJ assessed plaintiff with the residual functional capacity:

**. . . to perform sedentary work . . . with the following special limitations to accommodate the claimant's severe impairments; standing/walking limited to two of eight workday hours, able to be seated for eight of eight workday hours, occasional extension and overhead reach with right arm, and lifting limited to ten pounds both occasionally and frequently.**

AR 11-12 (emphasis in original).  Also as noted above, a claimant's RFC assessment is used at step five of the sequential disability evaluation process to determine whether he or she is able to perform other jobs. See SSR 96-8p, 1996 WL 374184 *2.

A claimant's residual functional capacity is what he or she "can still do despite his or her limitations." Id.  It is the maximum amount of work the claimant is able to perform based on all of the relevant evidence in the record. See id.  However, an inability to work must result from the claimant's "physical or mental impairment(s)," and the ALJ therefore must consider only those limitations and restrictions "attributable to medically determinable impairments." Id.  On the other hand, in assessing a claimant's RFC, the ALJ also is required to discuss why the claimant's "symptom-related functional limitations and restrictions can or cannot reasonably be accepted as consistent with the medical or other evidence." Id. at *7.

If a claimant cannot perform his or her past relevant work, at step five of the disability evaluation process the ALJ must show there are a significant number of jobs in the national economy the claimant is able to do. See Tackett v. Apfel, 180 F.3d 1094, 1098-99 (9th Cir. 1999); 20 C.F.R. § 416.920(d), (e).  The ALJ can do this through the testimony of a vocational expert or by reference to defendant's Medical-Vocational Guidelines (the "Grids"). Tackett, 180 F.3d at 1100-1101; Osenbrock v. Apfel, 240 F.3d 1157, 1162 (9th Cir. 2000).

An ALJ's findings will be upheld if the weight of the medical evidence supports the

hypothetical posed by the ALJ. See Martinez v. Heckler, 807 F.2d 771, 774 (9th Cir. 1987); Gallant v. Heckler, 753 F.2d 1450, 1456 (9th Cir. 1984). The vocational expert's testimony therefore must be reliable in light of the medical evidence to qualify as substantial evidence. See Embrey v. Bowen, 849 F.2d 418, 422 (9th Cir. 1988). Accordingly, the ALJ's description of the claimant's disability "must be accurate, detailed, and supported by the medical record." Id. (citations omitted). The ALJ, however, may omit from that description those limitations he or she finds do not exist. See Rollins v. Massanari, 261 F.3d 853, 857 (9th Cir. 2001).

At the hearing, the ALJ posed a hypothetical question to the vocational expert containing substantially the same limitations as were included in the ALJ's assessment of plaintiff's residual functional capacity. See AR 27. In response to that question, the vocational expert testified that an individual with those limitations – and with the same age, education and work experience as plaintiff – would be able to perform the jobs noted above, namely that of small products assembler and paper sorter/recycler. See AR 27-28. Based on the testimony of the vocational expert, the ALJ found plaintiff would be capable of performing other jobs existing in significant numbers in the national economy and therefore not disabled. See AR 16-17.

Plaintiff argues, and the Court agrees, the ALJ erred in relying on the testimony of the vocational expert here, given the ALJ's errors in evaluating both the objective medical and lay witness evidence in the record. Specifically, because of those errors, it is far from clear that the residual functional capacity with which the ALJ assessed plaintiff – and thus the hypothetical question based on that RFC assessment – is entirely accurate. Accordingly, the Court finds the ALJ's step five determination was improper as well. On the other hand, the Court does not find the substantial evidence in the record supports a restriction consisting of missing four or more days of work per week at this time, and therefore finds no error on the part of the ALJ in failing

ORDER - 14

1    to adopt it or to find plaintiff disabled on that basis.

2    VIII.    This Matter Should Be Remanded for Further Administrative Proceedings

3        The Court may remand this case "either for additional evidence and findings or to award

4    benefits." Smolen, 80 F.3d at 1292.  Generally, when the Court reverses an ALJ's decision, "the

5    proper course, except in rare circumstances, is to remand to the agency for additional

6    investigation or explanation." Benecke v. Barnhart, 379 F.3d 587, 595 (9th Cir. 2004) (citations

7    omitted).  Thus, it is "the unusual case in which it is clear from the record that the claimant is

8    unable to perform gainful employment in the national economy," that "remand for an immediate

9    award of benefits is appropriate." Id.

10       Benefits may be awarded where "the record has been fully developed" and "further

11   administrative proceedings would serve no useful purpose." Smolen, 80 F.3d at 1292; Holohan

12   v. Massanari, 246 F.3d 1195, 1210 (9th Cir. 2001).  Specifically, benefits should be awarded

13   where:

14
15           (1) the ALJ has failed to provide legally sufficient reasons for rejecting [the
             claimant's] evidence, (2) there are no outstanding issues that must be resolved
16           before a determination of disability can be made, and (3) it is clear from the
             record that the ALJ would be required to find the claimant disabled were such
17           evidence credited.

18   Smolen, 80 F.3d 1273 at 1292; McCartey v. Massanari, 298 F.3d 1072, 1076-77 (9th Cir. 2002).

19   Because issues still remain with respect to the medical and lay witness evidence in the record,

20   plaintiff's residual functional capacity and her ability to perform other jobs existing in significant

21   numbers in the national economy, remand to defendant for further administrative proceedings is

22   appropriate in this case.

23                                        CONCLUSION

24       Based on the foregoing discussion, the Court hereby finds the ALJ improperly concluded

ORDER - 15

plaintiff was not disabled. Accordingly, defendant's decision is REVERSED and this matter is REMANDED for further administrative proceedings in accordance with the findings contained herein.

DATED this 17th day of May, 2012.

Karen L. Strombom
United States Magistrate Judge